FILED
2012 Dec-10  PM 02:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## IN THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JOHN DOE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Case No.:** _____ |
| | ) |
| **STATE OF ALABAMA &** | ) |
| **GOVERNOR ROBERT J. BENTLEY,** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

## NATURE OF THE ACTION

1.      John Doe (hereinafter "Doe" or "Plaintiff") brings this cause of action for injuries resulting from the requirements of the Alabama Sex Offender Registration and Community Notification Act (hereinafter "CNA" or "Act") that became effective in 2011.  Ala. Code §§ 15-20A-1 *et seq*. in violation of the Ex Post Facto clause of the Constitution, the Eighth Amendment's prohibition against cruel and unusual punishment, and the Fourteenth Amendment's substantive and procedural due process rights and Equal Protection rights.  Plaintiff paid the price for his crime and today lives a law-abiding life as a productive member of his community.  Plaintiff is now being punished again by the requirements of the CNA.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this cause of action arises under 42 U.S.C. § 1983,  the Fourteenth Amendment of the Constitution, the Eighth Amendment, and Article 1, Section 10, Clause 1 of the United States Constitution.

3.     Venue is proper in this District under 28 U.S.C. § 1391 because the Plaintiff lives in this District and the actions that gave rise to this action arose in this jurisdiction.

## PARTIES

4.     Plaintiff, John Doe[1], is an adult resident of Jefferson County Alabama over the age of 19.

5.     Defendant, the State of Alabama, is a state of the United States that entered the Union as the 22nd State in 1819.

---

[1] A party may proceed anonymously in federal court by showing that he "has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" There are three factors that the court can consider. First, is the plaintiff seeking anonymity challenging governmental activity? Second, will the plaintiff be required to reveal information of the utmost privacy? Lastly, will the plaintiff be compelled to admit his intention to engage in illegal conduct and thus risk criminal prosecution? Plaintiff B v. Francis, 631 F.3d 1310 (11th Cir. 2011). Here, the nature of the Plaintiff's criminal background is grounds for the Plaintiff to proceed anonymously. The Plaintiff is challenging governmental conduct which involves the Plaintiff coming in contact with governmental officials on a regular basis. The Plaintiff does not wish to be the target of any backlash that could come as a result of filing this lawsuit and would therefore like to proceed anonymously.  Plaintiff desires to continue to be a law abiding citizen as he has done since his arrest in 1987.  However, the travel restrictions imposed by the CNA are not compatible with employment.  Plaintiff will be forced to engage in illegal activity in order to survive unless the CNA is overturned.  The fact that Plaintiff has a choice between breaking the law or watching his family erode because he is unable to support them meets the criteria of admitting to an intention to engage in illegal conduct.

6.     Defendant, Robert Bentley is the Governor of the State of Alabama. As chief executive of the State of Alabama, he has the duty to ensure that all of the laws of the State of Alabama are faithfully executed. Plaintiff asks that the Defendant, Bentley, be enjoined from enforcing the Act.

## FACTS

7.     Plaintiff was convicted of Attempted Molestation of a Child in Violation of Arizona State Code Section 13-1410 in 1987.

8.     Plaintiff was open and honest about his actions.  He admitted to his wife that he had been inappropriate with his victim.  Plaintiff and his wife notified a counselor who, as required by law, informed the police.  He made a full confession to the police and accepted a plea bargain.

9.     The Plaintiff was sentenced to five years of imprisonment in addition to probation.  Plaintiff served three years in prison in Arizona, was paroled in 1990, returned to his home state of Alabama, and served an additional two years on parole.

10.     In addition to his time served, the Plaintiff underwent extensive therapy both during his time on bail prior to sentencing as well as after his release from prison.  Plaintiff funded his therapy and actively participated in his treatment.

11.     Since that time, the Plaintiff has not incurred any additional felony offenses.

12.    At the time the Plaintiff moved to Alabama, the CNA as it is now written did not exist.

13.    At that time, Plaintiff had to register annually at the sheriff's department. There were no community notifications or living restrictions.  The registration was required for a maximum period of 25 years which will soon expire.

14.    The Plaintiff works as a full time software engineer. His job requires that he travels intrastate, interstate, and internationally.

15.    On July 1, 2011, the Alabama Legislature passed the Alabama Sex Offender and Community Notification Act. Ala. Code §§ 15-20A-1 *et seq.* which codified Ala. Code §§ 13A-11-200A *et seq.*

16.    An adult sex offender is subject to the CNA for life. Ala. Code § 15-20A-3(b). A violation of the Act is a Class C Felony.

17.    The new law added extensive requirements and restrictions for adult sex offenders as well as extending the term from 25 years to life without the possibility of early release. These new requirements include checking in with local law enforcement every three months or when the sex offender moves and limiting travel.

18.    Included with the registration requirements is a ten dollar ($10) fee that has to be paid each time a sex offender registers.

4

19.     A sex offender is considered to have established a new residence if he has resided in a place for three (3) consecutive days or spent ten (10) aggregate days in a given place in a month. Ala. Code § 15-20A-11(e)(1) *et seq.*

20.     A sex offender has to give thirty (30) days notice to the sheriff or police chief if he plans to move to a new residence. Ala. Code § 15-20A-21(a).

21.     An adult sex offender cannot apply for, accept, or maintain employment or volunteer for any employment or vocation within 2,000 feet of the property on which a school or childcare facility is located. Ala. Code § 15-20A-13(a).

22.     An adult sex offender who intends to temporarily be away from his county of residence for a period of three or more consecutive days has to report such information in person immediately prior to leaving his county of residence to local law enforcement in each county of residence. Ala. Code § 15-20A-15(a). The adult sex offender has to complete a travel permit form immediately prior to travel and provide the dates of travel and temporary lodging information. Ala. Code § 15-20A-15(a).

23.     A sex offender who intends to travel to another country has to report in person to local law enforcement in each county of residence at least 21 days prior to such travel. Ala. Code § 15-20A-15(c). Upon return to the county of

residence, the sex offender has to immediately report to local law enforcement in person. Ala. Code § 15-20A-15(f).

24.     The travel permit must be obtained in person at the Jefferson County Jail during limited hours Monday through Thursday.

25.     There are no procedures to allow for emergency travel, extension of travel times, obtaining permission to travel outside the limited hours, and no options for appeal.

26.     An offender may not leave for more than three (3) days without a permit, and cannot obtain a permit Friday, Saturday, Sunday, or on Holidays.  This imposition results in a form of imprisonment.

27.     Should someone subjected to the CNA be notified on a Friday that work requires him to travel the following week, there is absolutely no means of obtaining a travel permit in time.  This constitutes imprisonment.

28.     Should someone subjected to the CNA have a travel permit for a week and be required to return the following week, there is no means of obtaining a travel permit.  This constitutes imprisonment.

29.     An offender may not leave the country for 21 days, which constitutes an imprisonment.

30.     The CNA is so vague that even the officers enforcing the law do not understand the regulations, much less the offenders.  For example, the officers do

not know if travel to a territory of the United States such as Puerto Rico is considered "leaving the country" or not.

31.   These travel restrictions serve no protective purpose.  They simply imprison the offender with no benefit to society.  Prohibiting an offender from earning an honest living damages society instead of protecting it.

32.   When an adult sex offender plans to establish a new residence, the chief of police notifies all persons who have a legal residence within 1,000 feet of the declared residence of the sex offender and all schools and childcare facilities within three miles of the declared residence of the sex offender that the sex offender will be establishing or has established his or her residence. Ala. Code § 15-20A-21(a)(1).

33.   The United States Government is based on a system of "checks and balances" which is missing with the implementation of the CNA.  A vote against any type of sex offender law, no matter how absurd, is political suicide for both the legislative and the executive branches.  Many courts have taken the stance that "anything goes" as long as a punishment is labeled as being "regulatory," therefore removing any viable safeguards.  Alabama is testing the boundaries of what can be implemented with these types of laws.  The problem is that there are no boundaries.  All three of the branches of Government are effectively powerless to

provide the checks and balances mandated by the fundamental basis of our government.

34.     Within the legal system, there is a separation of powers.  The police investigate alleged crimes and execute arrests.  The court determines guilt and sets the punishment.  The department of corrections carries out the imposition of the sentence.  The CNA is the only form of punishment imposed by the police, and does so without any opportunity for review or appeal.  It is against the fundamental idea of separation of powers to have the police punish, but that is exactly what the CNA does.

## Count I—Ex Post Facto Law

35.     Plaintiff reasserts Paragraphs 1-34.

36.     The Ex Post Facto clause of the Constitution states that, "No State shall…pass any…ex post facto law." Art. I, Sec. 10, Cl. 1.

37.     By its conduct in implementing the new act, the Defendants have violated the Ex Post Facto Clause of the Constitution.

38.     The new additions to the Act go far beyond regulation; they are punishments which is precisely what the Ex Post Facto provision of the Constitution forbids.

39.     Labeling a law as regulatory does not circumvent the Ex Post Facto provision when the result of the law is clearly a punishment.

40.     The CNA imposes fines as well as imprisonment, both of which are liberty interests and therefore punishments.  A liberty interest limits "life, liberty, and property," which the CNA clearly impacts.

41.     The State has not provided proof of the types of sex offenders who have high recidivism rates and how these new requirements will control them.

42.     The Act, instead, punishes the Plaintiff for a crime for which he has already served his time because it imposes new debilitating restrictions.

43.     The new requirements have a punitive effect on the Plaintiff who now has to report four times during the year and when he has to leave the State for work.

44.     The Plaintiff now has to report in person at least twenty one (21) days prior to leaving the county or within three (3) days of leaving the state to travel interstate as well as reporting in person upon his return.

45.     Plaintiff is taken into custody each time he registers or requests a travel permit.  Plaintiff must turn himself into the Jefferson County Jail and submit to being held inside a locked room.  A deputy detains Plaintiff by locking him in a room with a heavy metal door.  Plaintiff is not allowed to leave of his own free will until the deputy is satisfied that the registration process has been completed, at which time the deputy must unlock the door.  Plaintiff asserts that this constitutes an imprisonment.

46.     The new CNA requires that a ten ($10) dollar "registration fee" be paid. It should be enough that the Plaintiff shows up to the sheriff's office to register. The added "fee" is actually a fine and is punitive in nature.

47.     The Plaintiff travels out of the state frequently for his job. The requirement that he has to report to a law enforcement agency in person before leaving hinders him when he is given short notice from his job of his need to leave the State.

48.     The statute does not explain what the Plaintiff is to do in the event he is not permitted to leave the State. There is nothing in the statute that provides for an appeals process. There is also nothing in the statute that gives the Plaintiff some relief in the event that his job requires him to leave immediately or does not give him enough notice to meet the three day or 21 day requirements.

49.     The statute has no provision for unforeseen delays in returning. Plaintiff would be guilty of a felony if weather caused cancelation of his return flight, even though the delay would be outside Plaintiff's control.

50.     Plaintiff must provide an exact schedule of his travel locations in advance including the address and phone number where he will be staying. Plaintiff cannot travel at the last minute and simply find a hotel, nor can his plans be flexible to meet the needs of his employment.  His entire itinerary must be set in stone which is often impractical.

51.     The statute is vague in that it does not explain how the days should be counted, i.e., is the plaintiff required to inform law enforcement three business days before leaving the state or three calendar days?  Is a "day" a 24-hour period? If someone leaves on Monday at noon and returns Thursday at noon, has he been gone four days (Monday through Thursday) or only three (3) days because there have been three 24-hour periods?

52.     As applied to this case, the additional requirements are punitive because the Plaintiff will lose his job because of the clearance requirements, the loss of liberty from the new travel permit requirements, the Plaintiff has to pay a $10 fine each quarter, the Plaintiff is required to transport himself and turn himself into jail each quarter for interrogation, and he must turn himself into custody at the jail in order to request a travel permit.

53.     Indeterminate fines are generally held as unconstitutional.  Not only was the $10 per quarter fine imposed 25 years after sentencing, the fine must be paid every three months for the rest of Plaintiff's life and may be increased at any time without any option for appeal.  As Plaintiff does not know how long he will live and there seem to be no limitations on how often and how much the fine will be increased, the total amount of the fine imposed is an open ended amount.

## Count II—Procedural Due Process

54.     Plaintiff reasserts Paragraphs 1-53.

55.     The Procedural Due Process clause of the Constitution guarantees that a State will not deprive a person of life, liberty, or property without some form of notice and an opportunity to be heard. *Hamdi v. Rumsfield,* 542 U.S. 547 (2004).

56.     The Act violates the Plaintiff's right to procedural due process of law under the Fourteenth Amendment to the Constitution.

57.     The extent of the living restrictions is depriving the Plaintiff of the opportunity to move from his current residence.

58.     The fact that the Plaintiff has to be subjected to the law for his entire life hinders the Plaintiff's ability to show that he is no longer a threat to society.

59.     The purpose of criminal punishment is to rehabilitate criminals so that when they re-enter society or while they are living amongst society, they are no longer a threat. This law is essentially a lifelong probation.  Plaintiff must report in person to a deputy who performs the same functions as a probation officer.  A $10 fine is paid which is similar to a probation fee.   Plaintiff must ask the deputy/probation officer for a written travel permit to leave the state for more than three days.   If Plaintiff fails to comply with the terms of the imposed probation/registration, he is possibly subject to begin a ten year prison sentence.

60.     Probation may not be longer than the associated term of imprisonment.   Even though the CNA law calls this retroactive probation a "registration," the term is life even though violation results in a ten year period of

12

incarceration.  If the term of imprisonment for violating the probation is ten years, then the registration should not be required for more than ten years.

61.     Additionally, the permission and notice requirements for leaving the state are hindering the Plaintiff's ability to make a living since his job sometimes gives him short notice on when he must leave the state to go to another state or country.  Plaintiff cannot obtain a travel permit after Thursday afternoon in order to be at a customer's site Monday morning.  Travel outside the US requires a 21-day notice.

62.     In addition to the fact that there is no appeal process, the travel notification requirements are vague and the rules are imposed inconsistently. Once, Plaintiff was allowed to travel to a US territory on business with a one day notice because no passport was required.  When Plaintiff requested a second permit to the same location, a deputy informed Plaintiff that travel "across the water" required 21 days even to a US territory.  Is it permissible to drive from Alabama to Miami on short notice but an airline that flies across the Gulf waters requires a 21 day notice?  Does travel to Alaska over land require only a one business day notice but travel to Hawaii mandates 21 days even though both are US states? Washington DC is not one of the 50 states but can be reached by land.  Does travel to Washington District of Columbia require one day or 21 days notice?

63.     The new Act interferes with the Plaintiff's right to make a living.

64.     The ten dollar ($10) registration fee is depriving the Plaintiff of his property.   This is in addition to the loss of property due to Plaintiff's time, gasoline, and parking expense.   It should be enough that the Plaintiff shows up to register.  There is no need for the fine.

65.     The new Act does not create an exemption for individuals who were convicted of crimes prior to its implementation.  The new Act greatly enhanced the Plaintiff's punishment long after completion of his sentence.

## Count III—Substantive Due Process

66.     Plaintiff reasserts Paragraphs 1-65.

67.     Plaintiff's substantive due process rights have been violated because substantive due process requires that states do not create laws that infringe upon fundamental rights.

68.     The Plaintiff has a fundamental right to make a living, to reside where he desires, to take his family on vacation where he wishes, and to travel as work demands.  Earning a living is a deeply rooted right and tradition in our Nation's history and in implementing the new requirements under the CNA, this State is impeding upon the Plaintiff's fundamental right.

69.     While it is a compelling state interest to protect children from recidivist sex offenders as well as all other crimes, the State has not shown how or if the added requirements in the new law will serve that compelling state interest.

Indeed, study after study has shown that the registration and restriction laws do not protect the public.  The only thing that the State has shown is that it has arbitrarily retroactively enhanced the sentences of one group of offenders while ignoring the others.

70.    The State has not shown that there is a positive correlation between having the additional requirements and a decrease in sex offenses. In this instance, in particular, the Plaintiff has not committed a crime since 1987. The new requirements are only making the Plaintiff's life hopeless by hindering his ability to make a living.

71.    There seems to be no bounds to the loss of freedom Alabama is able to retroactively impose upon Plaintiff.  There is no appeal process allowing an individual to object to the new punishments imposed.

## Count IV—Cruel and Unusual Punishment

72.    The Plaintiff reasserts Paragraphs 1-71.

73.    The new additions to the Act violate the Eighth Amendment of the Constitution which prohibits cruel and unusual punishment.

74.    Each time the Plaintiff desires to move, the Plaintiff has to think about the fact that every individual within 1,000 miles of where he would like to move will know that he is a sex offender even though he has not done anything to harm anyone in over two decades.

75.    The CNA is indeed cruel and unusual punishment and violates the Eighth Amendment.

## **Count V-Equal Protection**

76.    Plaintiff reasserts Paragraphs 1-75.

77.    The Fourteenth Amendment says, "No state… shall deny to any person within its jurisdiction the equal protection of the laws."

78.    Sex offenders are treated differently than any other criminal. They have to report to law enforcement every three months, more frequently if they stay in a place longer than three days or plan to leave the State for any reason.

79.    Sex offenders have to pay a 10 dollar fine each time they report to their local law enforcement.

80.    For every other crime committed in Alabama, including but not limited to murder, robbery, burglary, fraud, assault, substance abuse, and kidnapping, the convicted are not retroactively subjected to the arbitrary punishments that are imposed on the single group with the sex offender label.

81.    A person convicted of a crime associated with substance abuse, such as a DUI, has a much higher chance of reoffending and has the potential to kill with his automobile.  People convicted of a crime involving driving in an altered state present a clear and present danger but do not have these types of punishments.

82.    In regards to the travel restrictions, Plaintiff asked a deputy what travel arrangements were made for truck drivers and others who traveled as part of their employment.  The deputy stated that the law did not allow for someone to be a truck driver.  This appears to be the only crime where a person is retroactively banned from earning a living in a vocation that is completely unrelated to his offense.

83.    If an individual is convicted of any other crime other than one involving a sex offense, he or she does not have to adhere to the overly broad requirements of the CNA.

84.    In enforcing the CNA, the State of Alabama is denying the Plaintiff and every other sex offender equal protection of the laws.

## Count VI – Harassment

85.    Plaintiff reasserts Paragraphs 1-84.

86.    As the CNA has not been shown to protect the public and is a violation of the equal protection of the laws, the only purpose of the CNA is harassment.  When Plaintiff objected to the travel restrictions, he was told that "other states allow their offenders to travel without permit," implying that Plaintiff should leave Alabama.  Imposing hardships on an arbitrary group in an effort to get the group to relocate is harassment.  Even worse, there is no guarantee that Plaintiff could bring an end to the punishment simply by moving as his new

location could retroactively implement the same impositions.  Because the states are free to retroactively impose punishments without limitation, there is no advantage to relocating no matter how unbearable Alabama makes the situation.

## Count VII – Breach of Contract

87.    Plaintiff reasserts Paragraphs 1-86.

88.    The State of Alabama entered into an Agreement (attached as Exhibit A) with Plaintiff in 2003 enumerating Plaintiff's requirements and restrictions regarding registration.   The Agreement stipulates that Plaintiff is to register annually.  The State has breached the Agreement by forcing Plaintiff to register four (4) times a year, to pay a fine with each registration, and the imprisonment that is the result of the travel restrictions.

89.    The CNA makes the continuation of employment difficult if not impossible.   Plaintiff's earning potential between now and retirement is approximately one million dollars ($1,000,000.00.)  Plaintiff will be damaged by at least that amount if Alabama continues to violate the Agreement.

## Count VIII – Status Crimes

90.    Plaintiff reasserts Paragraphs 1-89.

91.    *Robinson v. California 1962 (Robinson)* put an end to status crimes. As the CNA is a punishment based solely on status, the CNA is a direct violation of Robinson.

## Count IX – Punishment Unrelated to Crime

92.   Plaintiff reasserts Paragraphs 1-91.

93.   *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) states that probation restrictions must be directly linked to the crime or tailored to prevent the specific individual from committing another crime.  Plaintiff's crime did not involve travel in any way as the offense occurred in his home.  Likewise, there is absolutely no indication that the sudden travel restrictions will impede a future crime, as Plaintiff has traveled unrestricted for decades without committing a new offense.

94.   Plaintiff contends that the CNA is probation and therefore Lent prohibits the imposition of restrictions unrelated to his crime.  Even if the court disagrees with the assertion that the CNA is probation, it can easily be reasoned that Lent still applies.  If it is illegal for an unrelated restriction to be imposed as a punishment, then it stands to reason that it is illegal to impose such a debilitating and pointless restriction under the guise of regulation.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully asks that this Court:

A.   Enter a preliminary and thereafter a permanent injunction enjoining the portions of the Act that violate the rights of Plaintiff.

B.   Declare that the Act violates the Ex Post Facto Clause; the procedural component of the Due Process Clause; the substantive component of the Due

Process Clause; the Eighth Amendment; and the Fourteenth Amendment of the Constitution of the United States.

      C.     Enter judgment in favor of the Plaintiff.

      D.     Award Plaintiff the costs of this lawsuit and reasonable attorneys' fees.

      E.     Order such other and further relief as this Court may deem just and proper.

Respectfully submitted,

/s/  Scott Morro
Scott Morro (ASB-4954-C30M)
Attorney for Plaintiff
Morro Law Center, LLC
P.O. Box 1644
Gardendale, AL  35071
(205) 631-6301 (office)
morrolawcenter@bellsouth.net